ryUNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Blue Cross and Blue Shield of South Carolina, | ) | C/A No. |
| | ) | |
| *Plaintiff*, | ) | **COMPLAINT** |
| | ) | **(Non-Jury)** |
| Versus | ) | |
| | ) | |
| AMSIVE, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |

The Plaintiff Blue Cross and Blue Shield of South Carolina (hereinafter, "Plaintiff" or "BCBSSC"), complaining of the above-named Defendant, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff BCBSSC is a South Carolina corporation with its principal place of business in Columbia, South Carolina.

2. Defendant AMSIVE, LLC ("Amsive") is a limited liability company incorporated in the State of Delaware having its principal place of business in Illinois.

3. BCBSSC and Amsive executed a Master Services Agreement that became effective on March 22, 2023 (the "MSA").

4. Pursuant to Paragraph 20 of the MSA:

*"[A]ny court proceedings related to this Agreement shall be held in the exclusive jurisdiction of either the state or federal courts located in Richland County, South Carolina, and the Parties waive any and all rights to a jury trial, and agree to have any disputes decided by a judge sitting without a jury. The Parties waive any and all rights to the contrary that are related to personal jurisdiction or venue."*

5. Therefore, this Court has personal jurisdiction over Amsive.

6. This Court also has subject matter jurisdiction over this matter and venue is proper in the Columbia Division. 28 U.S.C. §§ 1332 & 1391.

## **FACTS**

7. BCBSSC offers health insurance products to South Carolinians including both Medicare and non-Medicare products.

8. As part of its operations, BCBSSC conducts marketing campaigns designed to increase customer awareness of its products and grow its enrollment.

9. In furtherance of these objectives BCBSSC and Amsive executed an MSA in which Amsive agreed to furnish services to BCBSSC as further outlined in one or more Statements of Work.

10. In the MSA, Amsive warranted to BCBSSC that the services it agreed to perform pursuant to the MSA would be performed in a professional, timely and workmanlike manner, in accordance with the requirements set forth in the applicable Statement(s) of Work and all applicable, commercial reasonable industry standards.

11. Further, pursuant to the MSA, Amsive agreed to indemnify BCBSSC as follows:

> "**14. Indemnification; Disclaimer; Limitation of Liability.** *Contractor [Amsive] shall indemnify Company [BCBSSC], its officers, directors, agents, and employees from and against any and all third party liabilities, demands, claims suits, losses, damages, causes of action, fines, or judgments, including, but not limited to costs, attorney fees, witness fees and expenses incident thereto, for any of the following, arising out of or in connection with the Contractor's performance of the Services in breach of this [MSA]: (a) injuries to persons (including death) and for loss or damage to or destruction of property (including property of Company); (b) any third party claim against Company for infringement of any patent, copyright, trademark, service mark, trade secret or other legal or equitable right of such third party; (c) any penalties, fines, or assessments by a governmental entity or agency against Company for violation of any federal or state law or regulation concerning privacy and confidentiality of protected health information; (d) any third party claim against Company for violation of any federal or state law or regulation concerning privacy and confidentiality of protected health information provided that this indemnity shall not cover any claims relating to the initial disclosure of the protected health information from Company to Contractor for which Company shall be responsible and shall indemnify, defend, and hold Contractor harmless from and against all claims and liability arising*

*therefrom; and (e) any third-party claims related to Contractor's breach of this [MSA]. In the event that any demand or claim is made or suit is commenced against the indemnified party, the indemnified party shall give prompt written notice thereof to the indemnifying party, and the indemnifying party shall assume such defense, and shall have the right to compromise or defend the same on behalf of the indemnified party. Neither Party shall be liable to the other Party or any third parties for any special, indirect, incidental, consequential, punitive, or exemplary damages, including, but not limited to, loss of revenue or anticipated profits or lost business, even if such damages are foreseeable or if a Party has actual or constructive knowledge of the possibility of such damages. Any amounts payable pursuant to any indemnification obligations shall be deemed to be direct damages EXCEPT FOR AMOUNTS DUE FROM COMPANY TO CONTRACTOR IN CONNECTION WITH THE SERVICES PROVIDED HEREUNDER, IN NO EVENT WILL EITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY, INCLUDING BREACH OF CONTRACT, TORT (INCLUDING NEGLIENCE), STRICT LIABILITY, AND OTHERWISE EXCEED THE AMOUNT ACTUALLY PAID BY CONTRACTOR TO COMPANY FOR THE TWELVE (12) MONTHS PRIOR TO THE EVENT GIVING RISE TO THE LIABILITY; PROVIDED THAT THE AGGREGATE LIABILITY OF EACH PARTY SHALL BE THREE TIMES (3X) THE AMOUNT ACTUALLY PAID BY CONTRACTOR TO COMPANY FOR THE TWELVE (12) MONTHS PRIOR TO THE EVENT GIVING RISE TO THE LIABILITY WITH REGARD TO ANY LIABILITY ARISING FROM A BREACH OF ANY OBLIGATION OF CONFIDENTIALITY, A PARTY'S INDEMNITY OBLIGATIONS, OR PURSUANT TO THE AGREEMENT WITH BUSINESS ASSOCIATE EXCEPT THAT CONTRACTOR'S LIABILITY PURSUANT TO SECTION 12(a) AND (b) SHALL BE UNLIMITED.*

12. In the MSA, Amsive also agreed to comply with Security Standards, Medicare Advantage Standards, and Confidentiality and Data Use Standards that were incorporated into the contract.

13. BCBSSC and Amsive executed a Statement of Work for the 2024 Annual Enrollment Period Medicare Advantage Campaign on or around June 13, 2023.

14. The objectives of this Statement of Work included the development of strategies and market research for increasing enrollment and improving enrollment campaigns for BCBSSC's Medicare Advantage product(s).

15. These objectives were to be pursued by Amsive: developing and defining marketing recommendations, media plans, and other creative messaging strategies for BCBSSC. The marketing recommendations specifically contemplated included direct mailings, emails, digital marketing, SEO, social media advertising, television advertising, print advertising, and landing page development

16. Further, Amsive was tasked with carrying out direct mailings and emailings to customers and prospective customers on BCBSSC's behalf

17. Necessarily, for Amsive to carry out this Statement of Work, BCBSSC was required to provide Amsive with detailed consumer data and customer information, including lists of prospective customers maintained by BCBSSC.

18. Separately, BCBSSC entered into a contract with the South Carolina Public Employee Benefit Authority ("PEBA") for the provision of health insurance products to PEBA members.

19. Solicitation of PEBA membership by BCBSSC is prohibited under the contract between PEBA and BCBSSC. Pursuant to this contract, any solicitation of PEBA membership by BCBSSC may result in an assessment of liquidated damages of $1,000 per person up to a maximum of $1,000,000.00.

20. Thus, in order to maintain compliance with the contract between BCBSSC and PEBA, BCBSSC removed information relating to PEBA customers and membership from all prospective customer lists prior to providing these lists to Amsive.

21. An internal review confirmed there were no PEBA members listed on BCBSSC's prospective customer lists at the time BCBSSC provided them to Amsive.

22. Upon receiving BCBSSC's prospective customer list, Amsive modified the list to add PEBA membership back into the BCBSSC prospective customer list.

23. Ultimately, and purportedly on BCBSSC's behalf, Amsive mailed approximately 280,000 marketing postcards to the prospective customers listed on Amsive's modified and unapproved BCBSSC prospective customer list, including to PEBA members.

24. This mailing caused PEBA to determine that BCBSSC had violated its contract with PEBA due to the mailing. PEBA consequently assessed contractual damages of $1,000,000.00 against BCBSSC pursuant to the same in or around September 27, 2024.

25. BCBSSC had no knowledge that Amsive modified BCBSSC's prospective customer list until it was informed of the contractually assessed damages by PEBA.

26. These damages against BCBSSC were assessed as a direct result of Amsive's unauthorized modification of BCBSSC's prospective customer list, inclusion of PEBA membership in the modified version of the same, and mailing of solicitation materials to the modified prospective customer list.

27. Further, as a result of Amsive's unauthorized modification and use of BCBSSC's customer list to mail direct solicitation materials to PEBA members, BCBSSC has been unable to use or generate new business from any of the leads generated from the mailings due to the potential risk of recontacting PEBA members.

28. BCBSSC demanded that Amsive pay the $1,000,000 contractually assessed damages by PEBA on or around October 9, 2024.

29. Amsive acknowledged BCBSSC's demand and indicated that, "Amsive has submitted this claim to its professional liability insurer and requested that the $1 million be paid to BCBSSC under the policy." B. Moore Ltr., Nov. 21, 2024.

30. Ultimately, in light of Amsive's failure to promptly agree to provide payment, BCBSSC covered the PEBA contractually assessed damages itself to ensure that it would not be found in further breach of the contract between itself and PEBA.

31. Since that time, BCBSSC has requested that Amsive indemnify or reimburse BCBSSC for the $1,000,000 paid to PEBA for Amsive's unauthorized mailing of direct solicitation materials to PEBA members.

32. However, to date, Amsive has not reimbursed BCBSSC for PEBA's contractually assessed damages.

## FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

33. The allegations of the preceding paragraphs are realleged as if repeated verbatim.

34. The MSA and the Statement of Work are valid, binding, and enforceable contracts between Amsive and BCBSSC.

35. As outlined above, Amsive breached the MSA and the Statement of Work in the following ways:

   a. In failing to provide the services described in the Statement of Work;

   b. In failing to obtain appropriate and necessary approvals for the modification of BCBSSC's prospective customer list;

   c. In mailing, without BCBSSC's authorization or knowledge, solicitation materials to BCBSSC customers who were not included the prospective customer list provided by BCBSSC to Amsive;

   d. In failing to provide BCBSSC indemnification for the PEBA contractually assessed damages; and

   e. In such other failures and breaches of contract as may be proved at trial.

36. As a result of Amsive's various breaches of contract, BCBSSC has suffered damage. These damages include, but are not limited to, being required to pay PEBA's $1,000,000 contractually assessed damages against BCBSSC for Amsive's direct mailing of solicitation materials to PEBA members; damage to goodwill and business reputation; and such other actual and consequential damages as will be proven at the trial of this case.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Warranty)

37. The allegations of the preceding paragraphs are realleged as if repeated verbatim.

38. In the MSA, Amsive provided certain warranties to BCBSSC regarding the quality, timeliness, and professionalism of its work.

39. Amsive's actions, as outlined above, breached these warranties. Amsive's breaches of warranty include, but are not limited to:

   a. In failing to provide the services described in the Statement of Work;

   b. In failing to obtain appropriate and necessary approvals for the modification of BCBSSC's prospective customer list;

   c. In mailing, without BCBSSC's authorization or knowledge, solicitation materials to BCBSSC customers who were not included the prospective customer list provided by BCBSSC to Amsive;

   d. In failing to provide BCBSSC indemnification for the PEBA contractually assessed damages; and

   e. In such other failures and breaches of contract as may be proved at trial.

40. As a result of Amsive's various breaches of warranty, BCBSSC has suffered damage. These damages include, but are not limited to, being required to pay PEBA's $1,000,000 contractually assessed damages against BCBSSC for Amsive's direct mailing of solicitation

materials to PEBA members; damage to goodwill and business reputation; and such other actual and consequential damages as will be proven at the trial of this case.

## FOR A THIRD CAUSE OF ACTION
### (Contractual Indemnification)

41. The allegations of the preceding paragraphs are realleged as if repeated verbatim.

42. The MSA and the Statement of Work are valid, binding, and enforceable contracts between Amsive and BCBSSC.

43. In the MSA, Amsive undertook and agreed to provide indemnification to BCBSSC for claims associated with Amsive's performance of work under the MSA or any Statement of Work performed thereunder.

44. PEBA's $1,000,000.00 contractual damages against BCBSSC were assessed as a direct result of Amsive's unauthorized modification of BCBSSC's prospective customer list to include PEBA members and mailing of direct solicitation materials to these PEBA members.

45. In light of Amsive's failure to promptly agree to provide payment, BCBSSC covered the PEBA contractually assessed damages itself.

46. Pursuant to the indemnity paragraph contained in the MSA, BCBSSC is entitled to indemnification from Amsive for the amount of the PEBA contractually assessed damages ($1,000,000.00), plus prejudgment interest.

## FOR A FOURTH CAUSE OF ACTION
### (Equitable Indemnification)

47. The allegations of the preceding paragraphs are realleged as if repeated verbatim.

48. A special relationship between Amsive and BCBSSC existed due to the nature of the Amsive's work for BCBSSC and the need for Amsive to use sensitive, personal, and highly confidential information relating to BCBSSC customers to perform its work.

49. PEBA's $1,000,000.00 contractual damages against BCBSSC were assessed as a direct result of Amsive's unauthorized modification of BCBSSC's prospective customer list to include PEBA members and mailing of direct solicitation materials to these PEBA members.

50. In light of Amsive's failure to promptly agree to provide payment, BCBSSC covered the PEBA contractually assessed damages itself.

51. BCBSSC has also incurred expenses necessary to protect its interests in resolving the PEBA contractually assessed damages and pursuing indemnification from Amsive.

52. Thus, to the extent that contractual indemnification is not available to BCBSSC, BCBSSC is nevertheless entitled to equitable indemnification from Amsive for the $1,000,000 contractually assessed damages it was obligated to pay PEBA due to Amsive's unauthorized and improper mailing to PEBA members, the costs incurred by BCBSSC in protecting and pursuing its interests, attorney's fees, and other such damages as may be proved at trial.

WHEREFORE, having fully complained of the Defendant Amsive, Plaintiff BCBSSC prays for the following relief:

a. For actual and consequential damages associated with Amsive's breach of contract;

b. For contractual and equitable indemnification from Amsive;

c. For attorney's fees and costs;

d. For prejudgment interest; and

e. For such other relief as the Court may deem just and proper.

        HOOD LAW FIRM, LLC
        172 Meeting Street
        Post Office Box 1508
        Charleston, SC  29402
        Phone: (843) 577-4435
        Facsimile: (843) 722-1630


        */s/ James B. Hood*
        James B. Hood (9130)
        james.hood@hoodlaw.com
        Virginia Rogers Floyd (12212)
        virginia.floyd@hoodlaw.com

        *Attorneys for the Plaintiff*
        *Blue Cross and Blue Shield of South Carolina*

<u>August 21, 2025</u>
Charleston, South Carolina